UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JESSE L. STEWART, JR.,

                              Plaintiff,
                                                    9:09-CV-0069
v.                                                  (GLS/GHL)

GARY HOWARD, D. MONELL, N. MARSH,
D. SPANGENBURG, D. SWARTS,
E. HOLLENBECK, J. EDWARDS, D. RUSSELL,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

JESSE L. STEWART, JR., JG0933
Plaintiff *pro se*
SCI Forest
Housing Unit C-A/61
P.O. Box 945
Marienville, Pennsylvania 16239

OFFICE OF FRANK W. MILLER                           FRANK W. MILLER, ESQ.
Counsel for Defendants                              MICHAEL J. LIVOLSI, ESQ.
6575 Kirkville Road
East Syracuse, New York 13057

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

     This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Jesse L.

Stewart alleges that Defendants, all employees of the Tioga County Jail, violated his

constitutional rights by limiting his ability to send legal mail, depriving him of his mattress and

bedding during daytime hours, subjecting him to excessive force, denying him medical care after the alleged use of excessive force, and conducting biased disciplinary hearings. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 30.) Plaintiff has opposed the motion. (Dkt. No. 32.) For the reasons that follow, I recommend that Defendants' motion be granted.

## I.     FACTUAL AND PROCEDURAL SUMMARY

This action involves Plaintiff's experiences at Tioga County Jail, where he was incarcerated from August 19, 2008, to January 13, 2009. (Dkt. No. 30-4 at 14:2-11.) The complaint consists almost entirely of copies of grievances and letters that Plaintiff submitted to other individuals and organizations. The "facts" section of the civil complaint form merely directs the reader to "see attached." As such, the precise contours of Plaintiff's claims are difficult to discern. The documents attached to the complaint show that:

On September 22, 2008, Plaintiff requested a grievance form so that he could complain about the facility's legal mail procedures. (Dkt. No. 1 at 41.) A grievance form was issued. *Id*.

On October 27, 2008, Plaintiff requested a grievance form so that he could complain about being denied access to the courts. (Dkt. No. 1 at 44.) Sgt. William "spoke with [Plaintiff] but he refuses to sign off. He states he needs these letters to go out to these courts because he's fighting extradition." *Id*.

On October 30, 2008, Defendant Officer Earl Hollenbeck issued an Inmate Rule Infraction Notice to Plaintiff accusing him of sending mail using another inmate's account. (Dkt. No. 1 at 31.)

In a "notice of intention" dated November 30 2008, Plaintiff alleged that, pending

2

disciplinary action against him, staff at the Tioga County Jail deprived him of his mattress, sheets, and blanket when temperatures were as low as fifteen degrees at night and forced him to sit directly on his steel bed for periods up to seventeen hours.  (Dkt. No. 1 at 8.)  In support of Defendants' summary judgment motion, Defendant Lt. David Monell declares that when inmates are accused of violating a disciplinary rule, they are placed in administrative segregation pending a hearing.  During that time, the inmate's bedding is removed during the day.  If this was not done, "inmates may intentionally violate rules in order to be assigned to administrative segregation so they could sleep in the cell all day instead of having to adhere to the normal inmate routine."  (Dkt. No. 30-11 at 6 ¶ 12.)  The parties agree that inmates' mattresses and bedding are returned at night.  (Dkt. No. 1 at 10; Dkt. No. 30-11 at 6 ¶¶ 13-15.)

In his "notice of intention," Plaintiff alleged that on November 3, 2008, he asked for a grievance form.  (Dkt. No. 1 at 8.)  Defendant Officer Douglas Swarts told him "if you don't shut the fuck up I'll have a few people shut you up."  *Id.*  Two or three minutes later, several other officers, including Defendant Sergeant Dennis Spangenburg, arrived and stood in front of Plaintiff's locked cell.  *Id.*  Plaintiff asked Defendant Spangenburg why he was denying Plaintiff the right to file a grievance.  *Id.* at 8-9.  Defendant Spangenburg replied "I can deny you anything I want."  *Id.* at 9.  Defendant Officers Jonathan Edwards and David Russell then entered Plaintiff's cell and handcuffed Plaintiff so tightly that the handcuffs "stopp[ed] the flow of blood to [Plaintiff's] hands."  *Id.*  Defendants Edwards and Russell then escorted Plaintiff to the intake area of the facility.  Along the way, they used Plaintiff's "head and body as a ram to open the electronically control[l]ed doors," which cut Plaintiff's lip and caused his nose to bleed.  *Id.*  Attached to Plaintiff's complaint are affidavits from inmates who state that they witnessed this

3

incident.  *Id.* at 14-15.

Plaintiff alleged in his "notice of intention" that upon arrival at the intake area, he was placed in a strip isolation cell.  (Dkt. No. 1 at 9.)  Several officers "entered in behind me, at what time I was hit with closed fist[s] and what felt like kicks from all directions to my head, back, ribs, and groin area several times." *Id.*  Plaintiff was punched in the right eye.  *Id.*  After that, Plaintiff's handcuffs were removed and Defendant Sergeant Nathaniel Marsh entered the cell, grasped Plaintiff around the neck with one hand, held his mace an arm's length away from Plaintiff's face, and repeated "get the fuck up you little asshole" over and over.  *Id.*

Defendants Marsh, Spangenburg, Swarts, Edwards, and Russell have submitted notarized affidavits in support of Defendants' motion for summary judgment stating that they did not assault Plaintiff.  (Dkt. No. 30-11 at 10, 12, 18, 22, 24.)

At 10:50 a.m., Defendant Swarts issued two Inmate Rule Infraction Notices.  The first stated that Plaintiff "refused to lock in his cell after numerous orders to do so.  Duress alarm was activated." (Dkt. No. 1 at 32.)  The second stated that Plaintiff "disrupted the pod by yelling threats to jail personnel." *Id.* at 33.

In his "notice of intention," Plaintiff alleged that he needed medical attention but was locked in the cell alone without such attention for approximately fourteen hours.  (Dkt. No. 1 at 9.)  At 11:30 p.m., Plaintiff was escorted back to his usual cell.  *Id.*  All of his personal property had been removed and he was given only a mattress and a blanket.  *Id.*  The next morning, officers removed the mattress.  *Id.*  Plaintiff was told that he could only shower if he remained handcuffed and shackled.  *Id.*  He was given only two sheets of toilet paper.  *Id.* at 9-10.  This pattern of being given a mattress at night and having it removed in the morning continued for ten

4

days.  *Id.* at 10.

On November 6, 2008, Plaintiff submitted an Inmate Request Form asking to "be released from . . . restraint and receive my property back today."  (Dkt. No. 1 at 45.)  His request was denied.  *Id.*

In his "notice of intention," Plaintiff alleged that when his property was finally returned to him, he "became submissive" and "did not file any more grievances as I was told not to or the next time it may be worse."  *Id.* at 10.

In his "notice of intention," Plaintiff alleged that Defendant Marsh conducted a biased disciplinary hearing and found him guilty "on all of the infractions."  (Dkt. No. 1 at 10.)  Another attachment to the complaint shows that on November 12, 2008,  Defendant Marsh found Plaintiff guilty and sentenced him to twenty-eight days of keeplock with no programs, no commissary, twenty minute hygiene, and legal phone calls only.  *Id.* at 34.

In his "notice of intention," Plaintiff alleged that there is no "inhouse mail, or legal outgoing mail system" at Tioga County Jail and that Defendants refused to mail any item that would cost more than eighty-four cents.  (Dkt. No. 1 at 10.)

On December 1, 2008, Officer Sean Shollenberger issued an Inmate Rule Infraction Notice stating that Plaintiff used stamps from another inmate to send personal mail.  (Dkt. No. 1 at 35.)  A hearing was scheduled for December 17, 2008.  Plaintiff filed a written request stating that he had been informed of the hearing and requesting "that any decision to be determined may be done so without my participation or presence . . . I do not wish to participate in such hearing."  (Dkt. No. 1 at 36.)  Plaintiff's request was approved.  *Id.*  At the hearing, Defendant Marsh found Plaintiff guilty and sentenced him to fourteen days of keeplock, no programs, no commissary,

twenty minute hygiene, and legal calls only.  *Id*. at 37.  Defendant Marsh noted that "this is not the first infraction hearing due to [Plaintiff's] abusing the US Postal Service."  *Id*.  On December 18, 2008, Plaintiff appealed the decision.  *Id*. at 38.  Plaintiff stated that he had refused to attend the hearing because of Defendant Marsh's previous use of force against him and because the hearing was not recorded.  *Id.* at 39.  The Chief Administrative Officer denied the appeal on December 23, 2008, because the "sanctions imposed are appropriate."  *Id*.  at 38.

On December 17, 2008, Plaintiff requested two grievance forms so that he could complain about the lack of bedding and facility disciplinary and hearing procedures.  Grievance forms were issued.  (Dkt. No. 1 at 46-47.)

On December 18, 2008, Plaintiff submitted a grievance complaining about the lack of bedding, visits, food, medical care, access to courts, and water.  (Dkt. No. 1 at 20.)  The grievance coordinator denied the grievance because "[d]iscipline is not grievable.  There is an appeal process which the inmate can follow."  *Id*. at 22.  Plaintiff appealed to the Chief Administrative Officer.  *Id*.

On December 18, 2008, Plaintiff submitted a grievance complaining about Defendant Marsh's conduct during the disciplinary hearing[1] and requesting that disciplinary hearings be recorded or monitored by another hearing officer.  (Dkt. No. 1 at 23-24.)  The Grievance Coordinator denied the grievance because "NYS Minimum Standards requires that records be kept of infraction hearings.  Records are kept of the infraction hearing.  The TCJ does not have more than one officer available to do infraction hearings."  *Id*.  at 25.  Plaintiff appealed to the

---

[1]     Although it is not clear, Plaintiff was presumably referring to the November 12, 2008, hearing, which he attended, rather than the December 17, 2008, hearing that he refused to attend.

Chief Administrative Officer.  *Id*.  On December 22, 2008, Defendant Marsh completed a Grievance Investigation Form stating that he interviewed Plaintiff.  Defendant Marsh found that "this facility keeps all hearing records as well as provide a copy of the hearing record to the inmate.  This facility has more than one hearing officer available."  *Id*. at 26.

On December 18, 2008, Plaintiff submitted an Inmate Request Form asking to speak with the Undersheriff or Captain.  (Dkt. No. 1 at 48.)

On December 22, 2008, Plaintiff wrote a letter to the Chairman of the New York Commission of Corrections; the Hon. Thomas J. McAvoy, Senior United States District Judge, and the New York State Attorney General regarding conditions at Tioga County Jail.  (Dkt. No. 1 at 16-17.)  Specifically, Plaintiff complained about the bedding issue, the grievance and appeal system, and the legal mail system.  *Id*.

On December 28, 2008, Plaintiff submitted a grievance complaining about the facility's legal mail procedure.  (Dkt. No. 1 at 27.)  The Grievance Coordinator denied the grievance because "[t]his facility is not denying you access to the courts.  Minimum standards ha[ve] been and will be controlled by the State of NY, therefore this issue is not grievable.  NYSCOC was contacted regarding your reference to a 'new' state directive regarding legal mail.  No such directive exists."  *Id*. at 28.  Plaintiff checked the box indicating that he wanted to appeal to the Chief Administrative Officer and wrote a note that he "was told that Lt. D. Monell is the Chief Officer and that I could not appeal this decision any higher."  *Id*.

In his "notice of intention," Plaintiff alleged that on December 31, 2008, he was summoned to the front of the jail for an interview with Defendant Lt. D. Monell.  (Dkt. No. 1 at 11.)  Defendant Monell questioned Plaintiff about his December 22, 2008, letter to the

7

Commission of Corrections.  *Id*.  Defendant Monell said that he did not give a damn about federal standards regarding bedding.  *Id*.  Defendant Monell told Plaintiff he should save his weekly postage allowance until he had enough to send a large document and did not respond when Plaintiff informed him that he was not allowed to do.  *Id*.  Regarding Plaintiff's complaint that he had received only two sheets of toilet paper, Defendant Monell replied that this was facility policy. (Dkt. No. 1 at 12.)  Defendant Monell stated that he had reviewed the videotape of the alleged excessive force incident and did not see anything.  *Id*.  Defendant Monell asked "in a sarcastic manner" whether Plaintiff wanted protective custody because he felt threatened by the facility's officers.  Plaintiff said no.  *Id*.

On January 1, 2009, Plaintiff filed an Inmate Request Form stating that he had not received responses to his appeals regarding disciplinary hearings.  (Dkt. No. 1 at 49.)  Defendant Russell responded that "Grievance #36 was upheld so there is no appeal.  Grievance #35 was not a grievable issue because it regarded disciplinary sanctions."  (Dkt. No. 1 at 50.)

On January 1, 2009, Plaintiff wrote to the Commission of Corrections informing them of his conversation with Defendant Monell and requesting an outside investigation.  (Dkt. No. 1 at 18.)

On January 5, 2009, Plaintiff filed an Inmate Request Form asking for a grievance form. He stated that "the taking of bedding is not a disciplinary sanction but in fact an illegal practice." (Dkt. No. 1 at 42.)  Defendant Monell replied that "removal of bedding is a disciplinary sanction and as such is not a grievable issue.  Do not put in any more requests on this matter."  *Id*.

On January 5, 2009, Plaintiff filed an Inmate Request Form stating that "the grievant has the right to appeal any decision by the grievance committee to the highest level for confirmation

of such determination." (Dkt. No. 1 at 43.) Defendant Monell replied that Plaintiff should "read minimum standards - once the action requested has been met - there is no grounds for appeal. Request for grievance is denied. Do not put in any more requests on this matter." *Id*.

On January 5, 2009, Plaintiff wrote to the Commission of Corrections again. He stated that he was being illegally denied the right to file grievances and that Defendant Monell "attempted to intimidate me." (Dkt. No. 1 at 19.) In a separate letter, he stated that his "grievance is not in regards to any disciplinary sanctions, but in fact an illegal local procedural practice at Tioga County Jail." (Dkt. No. 1 at 29.) He stated that he had been deprived of bedding, food, medical care, visits, and mail without due process. *Id*. at 29-30.

On January 8, 2009, Plaintiff filed an Inmate Request Form stating that he wanted to file a grievance about "the issue of periodicals and the donation/reading of them." (Dkt. No. 1 at 51.) A sergeant (signature illegible) responded that "this is not a grievable issue - this is a requestable issue which will be denied due to security problems encountered in the D-pod housing unit involving the newspaper. Donations of books and magazines are allowed - you also are allowed to release property to persons outside of the jail." *Id*. at 52.

Plaintiff filed this action on January 21, 2009. (Dkt. No. 1.) Defendants now move for summary judgment. (Dkt. No. 30.) Plaintiff has opposed the motion. (Dkt. No. 32.) Defendants have filed a reply. (Dkt. No. 36.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

### B.      Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise*

---

[2]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

*General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations

11

contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## III.    ANALYSIS

Defendants argue that they are entitled to summary judgment because (A) Plaintiff refused to cooperate with his deposition; (B) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") regarding the November 3 excessive force incident "and other claims such as lack of toilet paper"; (C) Plaintiff has failed to state an Eighth Amendment conditions of confinement claim; (D) Plaintiff's allegations regarding the lack of bedding do not state a due process claim; (E) Plaintiff has failed to state a claim that he was denied access to the courts; and (F) Plaintiff has not alleged that Defendants Howard or Hollenbeck were personally involved in any alleged constitutional violation.

### A.    Deposition

Defendants move, pursuant to Federal Rule of Civil Procedure 37, to dismiss this action because Plaintiff unilaterally ended his deposition before answering any substantive questions. (Dkt. No. 30-12 at 10-11.)  In the alternative, Defendants request an order precluding Plaintiff from offering sworn testimony in opposition to any motion brought by Defendants or at trial.  *Id.* at 11.  I find that Defendants' motion is untimely.

This Court's Mandatory Pretrial Discovery and Scheduling Order, issued on March 31, 2009, granted Defendants permission to depose Plaintiff.  The order stated that "[t]he failure of the plaintiff to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action pursuant to [Rule] 37."  (Dkt. No. 21 at 3 ¶ D.)  The order also

12

noted that "any motion to compel discovery in the case must be filed not later than ten (10) days after the deadline for completing discovery."[3]  *Id.* at 4 n. 5.  The order set July 29, 2009, as the deadline for completing discovery.  *Id.* at 4 ¶ A.

On July 2, 2009, Defendants requested permission to depose Plaintiff.  (Dkt. No. 22.) The Court denied the motion as moot, noting that permission had already been granted.  (Dkt. No. 23.)  On July 31, 2009, Defendants requested an extension of the discovery cut-off date to allow them time to take Plaintiff's deposition.  (Dkt. No. 24.)  The Court granted Defendants' request and extended the discovery deadline to September 19, 2009.  (Dkt. No. 27.)

On September 14, 2009, Defendants conducted Plaintiff's deposition.  (Dkt. No. 30-4 at 9-17.)  When defense counsel began asking Plaintiff about his criminal history, Plaintiff stated "[y]ou're browbeating me here, and I'll write to the judge and tell him why I didn't cooperate." *Id.* at 15:14-15.  Plaintiff then ended the deposition.  *Id.* at 15:20-22.  No questions were asked or answered about the events at issue in this action.

Discovery in this case closed on September 19, 2009.  Defendants did not file a motion to compel Plaintiff's deposition or for sanctions until they filed the pending motion on October 27, 2009.  Because Defendants did not file their motion within ten days of the discovery cut-off date or request an extension of time in which to file a discovery motion, I recommend that their motion to dismiss the case as a sanction for Plaintiff's refusal to cooperate with his deposition be denied.

---

[3]     Effective January 1, 2010, the deadlines in the local rules were amended.  The local rule now requires that discovery motions be filed no later than fourteen days after the discovery cut-off date.  Local Rule 7.1(d)(8).

**B.**     **Exhaustion of Administrative Remedies**

Defendants argue that Plaintiff's claims regarding the November 3, 2008, alleged use of excessive force and the alleged failure to provide medical care after the incident must be dismissed because Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 30-12 at 2-3.)  Defendants are correct.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Tioga County Jail has an inmate grievance procedure.  (Dkt. No. 30-10 at 8-11.)  Under the procedure, the Corrections Officer assigned to the inmate's housing unit initially receives complaints either verbally or in writing and attempts to resolve the complaint informally.  *Id*. at ¶ 1.2 (A)(1-2).  If the complaint cannot be resolved informally, the inmate files a written complaint form, which is forwarded to the Shift Supervisor.  *Id*. at ¶ 1.2(A)(3-4).  If the Shift Supervisor cannot resolve the complaint, the complaint is forwarded to the Grievance Coordinator, who provides the inmate with a grievance form.  *Id*. at ¶ 1.2(A)(5-8).  The Grievance Coordinator is responsible for investigating and making a determination on the grievance and must give a

14

written copy of his or her decision to the inmate.  *Id*. at ¶ 1.2(A)(9).  This written decision must

be issued within five business days of receipt of the grievance.  *Id*. at 1.3(C).  If the inmate does

not accept the Grievance Coordinator's determination, "an appeal will be forwarded to the Jail

Chief Administrative Officer."  *Id*. at ¶ 1.2(A)(11).  The inmate must appeal within two business

days of receipt of the Grievance Coordinator's determination.  *Id*. at ¶ 1.3(D).  At the request of

the inmate, a copy of the appeal will be mailed by the Jail Administrator to the Commission of

Corrections.  *Id*. at ¶ 1.2(A)(13).  The Jail Administrator must make a determination within two

working days.  *Id*. at ¶ 1.3(E).  The inmate may appeal within three business days of receipt of

the decision to the Commission of Corrections.  *Id*. at ¶ 1.3(F).

Here, Plaintiff did not file a grievance regarding the alleged use of excessive force on

November 3, 2008.  (Dkt. No. 30-11 ¶ 6.)  Therefore, he did not exhaust his administrative

remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry.  The Second Circuit has

held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available

administrative remedies.  *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[4]

First, "the court must ask whether [the] administrative remedies [not pursued by the

prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all

of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to

---

[4]        The Second Circuit has not yet decided whether the *Hemphill* rule has survived
the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), in which the Supreme
Court held that each step of an available grievance procedure must be "properly" completed
before a plaintiff may proceed in federal court.  *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S.
App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's]

exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's

failure to exhaust as a defense." *Id.* (citations omitted).  Third, if the remedies were available and

some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion

defense, "the Court should consider whether 'special circumstances' have been plausibly alleged

that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*.

(citations and internal quotations omitted).

     Here, as discussed above, administrative remedies were available to Plaintiff.  Defendants

preserved the exhaustion defense by raising it in their answer.  (Dkt. No. 19 at ¶¶ 8-10.)  Plaintiff

appears to argue that Defendants are estopped from asserting the defense or that special

circumstances exist justifying the failure to exhaust.  Specifically, Plaintiff states that exhausting

his administrative remedies would have been futile and "may have caused more harm to the

plaintiff" because the officers who allegedly assaulted him "are the persons that operate and give

the decisions" regarding grievances.  (Dkt. No. 32 at 1.)

     Plaintiff's explanation is belied by his actual conduct.  Plaintiff alleges that Defendant

Marsh was involved in the use of excessive force.  (Dkt. No. 1 at 9.)  Despite this fact, Plaintiff

filed a grievance three weeks after the incident complaining about Defendant Marsh's conduct

during a disciplinary hearing.  (Dkt. No. 1 at 23-24.)  This indicates that Plaintiff was not, in fact,

afraid to file grievances against the Defendants who allegedly assaulted him and denied him

medical care.  Thus, Plaintiff has not plausibly alleged that special circumstances prevented him

from exhausting his administrative remedies.  Therefore, I find that Plaintiff failed to exhaust his

administrative remedies regarding the alleged use of excessive force and I recommend that the

Court dismiss that claim.

### C.      Eighth Amendment Conditions of Confinement

Plaintiff alleges that Defendants violated his Eighth Amendment rights by removing his personal property, taking away his bedding and mattress during the day, allowing him to shower only if he remained handcuffed and shackled, and providing him with only two sheets of toilet paper.  (Dkt. No. 1 at 9-10.)  Defendants move for summary judgment of this claim.  (Dkt. No. 30-12 at 5.)

The Eighth Amendment to the United States Constitution imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To prove the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834.  Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Specifically, an inmate must show that he was deprived of a "single, identifiable human need such as food, warmth, or exercise."  *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  Here, Plaintiff does not allege that he was deprived of any human need.  He was provided with a mattress and blankets at night,

17

had the opportunity to shower, and received toilet paper.  Although his conditions may not have

been pleasant, the Eighth Amendment "does not mandate comfortable prisons." *Farmer*, 511

U.S. at 932 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  Therefore, I recommend that

the Court grant Defendants' motion and dismiss Plaintiff's conditions of confinement claim.

### D.    Due Process

#### 1.    Bedding

Defendants construe Plaintiff's complaint as asserting a claim that the removal of his

bedding during the day violated his right to due process.  Defendants argue that this claim should

be dismissed.  (Dkt. No. 30-12 at 5-6.)  Defendants are correct.

An individual claiming that he was deprived of an interest in property "must have more

than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He

must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S.

564, 577 (1972).  Plaintiff had not legitimate claim of entitlement to possessing bedding during

the day.  Therefore, I recommend that the Court dismiss this claim.

#### 2.    Disciplinary Hearing

Plaintiff appears to allege that Defendant Marsh deprived him of due process by

conducting a biased disciplinary hearing.  (Dkt. No. 1 at 10.)  Defendants have not addressed this

claim.  I find that it is subject to *sua sponte* dismissal.

In order to state a claim for violation of his procedural due process rights, a plaintiff must

allege facts plausibly suggesting that he was deprived of a liberty interest without due process of

law. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where

(1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

Assuming *arguendo* that the state has granted inmates in county jails an interest in remaining free from keeplock confinement, the issue is whether Plaintiff's confinement imposed an "atypical and significant hardship" on him in relation to the ordinary incidents of prison life. Courts in the Second Circuit have routinely declined to find a liberty interest where an inmate's keeplock confinement is an "exceedingly short" period, less than thirty days, and there is no indication that the inmate suffered any "unusual conditions" during the confinement. *Anderson v. Banks*, No. 06-Cv-0625, 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 7, 2008) ("Confinements in . . . keeplock of less than thirty days will not suffice to demonstrate a protected liberty interest absent other extraordinary circumstances of the confinement demonstrating that it was atypical or significant for other reasons.") (Sharpe, J.) (Homer, M.J.).[5]

Here, Defendant Marsh sentenced Plaintiff to twenty-eight days of keeplock after the November 12, 2008, hearing that followed the alleged excessive force incident. (Dkt. No. 1 at 34.) Defendant Marsh sentenced Plaintiff to fourteen days of keeplock after the December 17, 2008, hearing regarding Plaintiff's alleged use of another inmate's stamps. (Dkt. No. 1 at 37.) There is no indication that Plaintiff suffered any unusual conditions during these keeplock

---

[5] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

confinements.  Notably, Plaintiff's allegations regarding the removal of his bedding occurred not during these keeplock sentences, but rather during earlier administrative segregation periods in October and November.  (Dkt. No. 1 at 8-10.)  Thus, Plaintiff has not alleged facts plausibly suggesting, or raised a triable issue of fact, that he was deprived of a liberty interest.  Therefore, I recommend that the Court dismiss Plaintiff's due process claim against Defendant Marsh *sua sponte*.

> ### E.      Access to the Courts

Defendants argue that Plaintiff's claims regarding Tioga County Jail's legal mail procedures must be dismissed because (1) Plaintiff has not alleged the personal involvement of any Defendant; and (2) Plaintiff has not alleged any actual harm resulting from the procedures.  (Dkt. No. 36-3 at 1.)  Defendants did not raise this argument in their moving papers.  Normally, due process would thus require that I disregard the argument or give Plaintiff an opportunity to file a sur-reply.  Here, however, Plaintiff addressed this issue in his opposition despite Defendants' failure to raise it initially.  (Dkt. No. 32 at 1.)  Moreover, even if he had not, I would recommend that the Court dismiss the claim *sua sponte*.

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003).  "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)).  This right of access, however, guarantees a prisoner "no more than reasonable access to

the courts." *Herrera v. Scully,* 815 F. Supp. 713, 725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer,*

503 F. Supp. 27, 28 (S.D.N.Y. 1980)).  A claim for reasonable access to the courts under § 1983

requires that an inmate demonstrate that the alleged act of deprivation "actually interfered with

his access to the courts or prejudiced an existing action." *Id.* (citations omitted).  Courts have not

found an inmate's rights to be violated when the deprivation merely delays work on his legal

action or communication with the court. *Id.*   To state a claim for denial of access to the courts, a

plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted

deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.  *Lewis v. Casey*,

518 U.S. 343, 353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd,

M.J.).

Here, Plaintiff has not raised a triable issue of fact that he suffered any actual injury.  In

his "notice of intention," he stated that the facility's mail policies "*could* cause a great effect" and

"*could* cause irreparable harm" to two pending *habeas corpus* cases.  (Dkt. No. 1 at 10, emphasis

added.)  In his opposition to the motion for summary judgment, Plaintiff states that he "suffered

the loss of one of the court actions" because he could not mail a brief.  (Dkt. No. 32 at 1.)

However, I note that this statement is not "evidence" because Plaintiff's opposition was not

signed under penalty of perjury and does not contain any other language bringing it into

substantial compliance with 28 U.S.C. § 1746.  *See, LeBoeuf, Lamb, Greene & MacCrae, L.L.P.*

*v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999).  Therefore, I recommend that Plaintiff's claim

regarding legal mail be dismissed.

### F.    Personal Involvement

Defendants argue that Plaintiff has failed to allege personal involvement by Defendants

Howard or Hollenbeck.  (Dkt. No. 30-12 at 11-12.)  Defendants are correct.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).[6]  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant.[7]  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.[8]  In other words, supervisory officials may not be held liable merely because they held a position of authority.[9]  Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.

---

[6]      *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

[7]      *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[8]      *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[9]      *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[10]

The only allegation in the complaint regarding Defendant Hollenbeck is that he issued an Inmate Rule Infraction Notice to Plaintiff on October 30, 2008.  (Dkt. No. 1 at 31.)  Plaintiff has not alleged any facts plausibly suggesting, or raised a triable issue of fact, that Defendant Hollenbeck's conduct violated Plaintiff's constitutional rights.  Therefore, I recommend that any claims against Defendant Hollenbeck be dismissed.

The complaint's only reference to Defendant Howard is in the caption of the "notice of intention."  (Dkt. No. 1 at 7.)  Plaintiff could, perhaps, have argued that, as Sheriff, Defendant Howard was responsible for creating or allowing to continue unconstitutional policies.  However, Plaintiff did not allege any facts plausibly suggesting, or raise a triable issue of fact, that Defendant Howard was responsible for the policies about which Plaintiff complains.  Even if he had, as discussed above, Plaintiff has not provided sufficient evidence for any of his claims regarding those policies to survive summary judgment.  Therefore, I recommend that any claims against Defendant Howard be dismissed.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 30) be **GRANTED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Anderson v. Banks*, No. 06-Cv-0625, 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 7, 2008) in

---

[10]      The Supreme Court's decision in *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937 (2009) arguably casts in doubt the continued viability of some of the categories set forth in *Colon*. *See Sash v. United States*, ___ F. Supp. 2d ___, No. 08-CV-116580, 2009 U.S. Dist. LEXIS 116580, at *32-39, 2009 WL 4824669, at*10-11 (S.D.N.Y. Dec. 15, 2009).  Here, the Court will assume *arguendo* that all of the *Colon* categories apply.

accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: April 26, 2010
       Syracuse, New York


George H. Lowe
United States Magistrate Judge

24